IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| EBONY DAVIS, individually and on behalf of all others, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:16-cv-04297-NKL ) ) |
| D-W TOOL, INC. d/b/a QPI-MO, | ) ) |
| Defendant. | ) |

**ORDER**

Plaintiff Ebony Davis moves under Fed. R. Civ. P. 12(b)(1) to remand this Fair Credit Reporting Act case in its entirety for lack of subject matter jurisdiction, based on the United States Supreme Court's recent decision in *Spokeo v. Robins,* 136 S.Ct. 1540 (2016). [Doc. 35]. Defendant D-W Tool, Inc. moves for partial dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). [Doc. 22]. For the following reasons, Plaintiff's motion to remand is granted, and Defendant's motion to dismiss is denied as moot.

**I.   Background[1]**

Plaintiff Ebony Davis worked for SMX Staffing at Procter & Gamble. In December 2015, Davis was informed that Defendant D-W Tool, Inc. would be taking over and that if she wanted to work for D-W Tool, she would need to apply. Davis completed an employment application for D-W Tool while still working for SMX Staffing, and D-W Tool gave Davis a

---

[1] The challenge to the Court's subject matter jurisdiction involves a facial attack on Davis's Amended Complaint, Doc. 16, inasmuch as no affidavits or other evidence have been submitted in connection with Davis's motion to remand under Rule 12(b)(1). Therefore, the Court applies the same standards it would apply to a motion to dismiss under Rule 12(b)(6), and accepts as true the factual allegations contained in the Amended Complaint. *See Carlson v. GameStop, Inc.,* 833 F.3d 903, 908 (8th Cir. 2016).

start date of January 17, 2016.  D-W Tool instructed Davis to have a urinalysis before her start date and paid a fee to another company to obtain a consumer report on Davis.  After D-W Tool obtained a consumer report on Davis, D-W Tool instructed her that the urinalysis was no longer necessary because it was revoking her job offer due to information in her consumer report.

In her "FCRA violations" count, Davis alleges that D-W Tool violated the FCRA by failing to give her a copy of the consumer report and by failing to give her time to review and respond to the consumer report before terminating her.  Davis alleges that D-W Tool's actions constitute an adverse action in violation of the FCRA, which caused her to lose wages that she would have continued to earn while she was given time to review and respond to her consumer report.  Davis further alleges that she lost "employment and opportunities" as a result of D-W Tool's FCRA violation.  Finally, she contends that D-W Tool's violations were willful because D-W Tool had access to legal advice and committed multiple such FCRA violations.  Davis does not claim that the information in the consumer report was inaccurate.

In her state law breach of contract count, Davis alleges that D-W Tool entered into an agreement with the consumer reporting agency to procure private information about potential employees and that these agreements contained promises requiring D-W Tool to abide by the FCRA protections in 15 U.S.C. § 1681b(b)(2) and b(b)(3).  Specifically, Davis contends that as part of  D-W Tool's implied contract with this company, D-W Tool agreed to provide a copy of the consumer report and a copy of the FCRA Summary of Rights to applicants before any adverse action would be taken, based in whole or in part, on information obtained in the consumer report.  Davis alleges that she is a third party beneficiary of this contract between D-W Tool and the company.

Davis filed suit in the Circuit Court of Cole County, Missouri on October 7, 2016.  D-W Tool subsequently removed the case to this Court in November 2016.  On December, 12, 2016, Davis filed an Amended Complaint, Doc. 16, adding the third party beneficiary theory to her state law breach of contract claim.

**II.     Discussion**

Davis argues that this matter should be remanded back to Cole County because this Court lacks subject matter jurisdiction.  Specifically, Davis contends that she has not alleged a sufficiently concrete injury to impart Article III standing.  D-W Tool responds that Davis's Complaint alleges a significant injury with her adverse action claim, which is sufficient to confer standing.  D-W Tool also moves this Court to dismiss Davis's breach of contract claim under Rule 12(b)(6) for failure to state a claim.  Because subject matter jurisdiction is a threshold inquiry, the Court must first consider Davis's motion to remand.

   **A.     *Spokeo* and Standing**

In *Spokeo v. Robins*, the Supreme Court reaffirmed that to have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).  Davis and D-W Tool do not dispute that the alleged statutory violations are traceable to D-W Tool's conduct, and that the alleged violations are redressable by statutory damages.  Accordingly, the remainder of the discussion on the standing issue solely concerns the "injury in fact" requirement.

To establish injury in fact, a plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural

3

Case 2:16-cv-04297-NKL   Document 45   Filed 03/17/17   Page 3 of 9

or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). To be "particularized," an injury "'must affect the plaintiff in a personal and individual way[.]'" *Id.* (citing *Lujan*, 504 U.S. at 560 n.1). The parties do not dispute that Davis has alleged a particularized injury, which leaves at issue only the concreteness of Davis's injury.

The Supreme Court in *Spokeo* distilled several "general principles" from its prior cases with respect to concreteness. *Id.* at 1549-50. A concrete injury is one that is "'real,' and not 'abstract.'" *Id.* at 1548 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 472 (1971), and RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 305 (1967)). Tangible injuries plainly satisfy this requirement. *Id.* at 1549. "[N]evertheless," intangible injuries may also "be concrete." *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the *Spokeo* Court identified two important considerations: (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[;]" and (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

The Supreme Court then elaborated on the connection between statutory standing and concrete injury. First, the Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation[.]" *Id.* (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Therefore, "[a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

4

At the same time, the Court observed, in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id*. at 1549 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)). The Supreme Court noted that although one of the FCRA's purposes is to protect against inaccurate credit reporting, "not all inaccuracies cause harm or present any risk of harm[.]" *Id*. at 1550.

B.  **The FCRA**

As relevant to this case, the FCRA provides that the consumer must be given the right to review and discuss the content of a consumer report with the prospective employer before adverse action is taken against him or her based on the report:

> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

§ 1681b(b)(3).

The purpose of these and other provisions of the FCRA is to ensure fair and accurate credit reporting, protect consumer privacy, and promote efficiency in the banking system. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007), and 15 U.S.C. § 1681 (Congressional findings and statement of purpose). For a thorough discussion of the FCRA's legislative history, see *Thomas v. FTS USA, LLC,* 2016 WL 3653878 (E.D. Va. June 30, 2016).

C.  **FCRA Adverse Action Claim**

Davis's adverse action claim is based on § 1681b(b)(3), which provides a consumer the

right to receive a copy of the report, and review and discuss its content with the prospective employer, before adverse action is taken against him or her based on the report. Davis alleges she was fired without receiving a copy of her consumer report nor the opportunity to discuss the content of this report with D-W Tool.

D-W Tool argues that the adverse action claim in Davis's Complaint alleges a "significant injury as a direct result of Defendant's alleged conduct" because her claim includes that D-W Tool caused her to suffer lost wages, loss of employment and employment opportunities, and damages; that Davis "also seeks a variety of other damages . . . including statutory damages, punitive damages, costs and attorneys' fees"; and that had D-W Tool complied with the FCRA, Davis would have continued working and earning wages while being given time to review and respond to the consumer report. [Doc. 41, p. 3].

This Court has already found that such arguments and adverse action claims like Davis's fail to establish a concrete injury sufficient to confer subject matter jurisdiction. *See Boergert v. Kelly Servs., Inc.*, 2016 WL 6693104, (W.D. Mo. Nov. 14, 2016), on reconsideration in part, *Boergert v. Kelly Servs., Inc.*, 2017 WL 440272 (W.D. Mo. Feb. 1, 2017). In this case, although Davis has been deprived of statutorily required information, she has not shown any injury beyond the lack of access to that required information. She has not even alleged that she had a basis for challenging the information in the consumer report, which is the type of harm Congress was intending to prevent. *See Spokeo*, 136 S.Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk.").

D-W Tool suggests that Davis suffered a sufficiently concrete injury because she alleges that she would have been able to continue working for at least some amount of time had D-W Tool allowed her to dispute the accuracy of the report before terminating her. But, as already

6

noted, Davis does not claim that the information in the consumer report was inaccurate. Nor does Davis claim that D-W Tool would have reached a different decision had it given her a reasonable amount of time before taking the adverse action. Absent any allegation that the information in the consumer report was inaccurate, or that compliance with the FCRA's pre-adverse action notice requirement would have resulted in D-W Tool reaching a different conclusion about her qualification for employment, any loss she suffered could not have resulted from D-W Tool's failure to give her a reasonable amount of time to address what was revealed in her consumer report. *See Tyus v. United States Postal Serv.*, 2016 WL 6108942, at *7 (E.D. Wis. Oct. 19, 2016) (plaintiff claimed financial and other injury under the FRCA due to lack of pre–adverse action notice, but he did not allege the consumer report was inaccurate or that the employer would have reached a different decision had he been given notice; plaintiff therefore lacked standing); *Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 919 (D.C. Cir. 1989) (plaintiff lacked standing to pursue a claim regarding an alleged procedural irregularity in the adoption of a rule; the alleged procedural irregularity was "too tenuously connected to a potential substantive injury, in that there was no reason to believe the outcome would have been different even if" the procedure had been correctly followed).

As to D-W Tool's identification of the various types of damages that Davis seeks, including statutory and punitive damages, as well as attorneys' fees, D-W Tool fails to provide any argument as to how such damages establish a concrete injury. Further, to the extent that D-W Tool contends such damages somehow demonstrate a concrete injury, the Court rejects this argument; if alleging such damages equated to alleging a sufficiently concrete injury under Article III, the concrete injury requirement would be a purposeless, empty requirement, indeed. For the previous reasons, the Court cannot find a sufficiently concrete injury to establish

standing to bring the adverse action count.  Therefore, this Court lacks subject matter jurisdiction over this claim.

D. **State Law Breach of Contract Claim**

Davis's only remaining claim is for breach of contract under state law.  "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c)(3) to dismiss supplemental state law claims when all federal claims have been dismissed."  *Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006); *see also, Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").  Therefore, the Court need not address Davis's standing to bring this remaining state law claim.  Rather, because the Court lacks subject matter jurisdiction over the only claim over which it has original jurisdiction—the adverse action FCRA claim—the Court declines to exercise supplemental jurisdiction over Davis's remaining state law breach of contract claim.

E. **Dismissal versus Remand**

Davis's request for remand rather than dismissal is well-taken.  *See Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025, 1033 (8th Cir. 2014) ("If . . . the case did not originate in federal court but was removed there by the defendants, the federal court must remand the case to the state court from whence it came [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.") (quoting 28 U.S.C. § 1447(c)) (internal quotation marks omitted).  Therefore, the Court will remand this case to the state court from which it was removed.

Because the Court grants Davis's motion to remand, D-W Tool's motion to dismiss is denied as moot.

## III.  Conclusion

Plaintiff Davis's motion to remand, Doc. 35, is granted.  Defendant D-W Tool's motion to dismiss, Doc. 22, is denied as moot.

/s/Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  March 17, 2017
Jefferson City, Missouri